ALBERT SLOB, Appellee, v. GERRIT DE MOTS, SR., and J. HOEVEN, Appellants.

**Reformation of instruments:** EVIDENCE. A written contract of sale
1 by one partner of his interest in the firm to his co-partners which names the sum to be paid him, without stating any basis of computing the same, will not be reformed as to the amount to be paid on the ground of mistake unless a clear case of mistake is made out. In this action the evidence is held sufficient to show that the sum named in the contract was the result of a mutual mistake, and was determined by computation from an erroneous invoice of the partnership property.

**Same:** PAROL EVIDENCE. The parol evidence rule does not apply to
2 a suit in equity to reform a contract.

*Appeal from Woodbury District Court.*—HON. FRANK R. GAYNOR, Judge.

TUESDAY, NOVEMBER 21, 1911.

ACTION on a promissory note. An equitable defense was pleaded. The cause was tried on the equity side of the court. There was a decree for the plaintiff for the full amount of the note. Defendants appeal.—*Reversed.*

*Kass Bros.,* for appellants.

*O. T. Naglestad* and *Sullivan & Griffin,* for appellee.

EVANS, J.—The plaintiff brought a suit upon a note for $1,600, dated January 16, 1909. The defendants admitted the execution of the note, but averred there was a mistake in the amount thereof. They also set up a written

contract in pursuance of which the note was given and averred a mistake therein and asked a reformation of both note and contract. Prior to January 16, 1909, the plaintiff and the defendants were partners in the implement business at Sioux City. On that date a dissolution of the partnership was effected by the plaintiff's sale of his interest therein to the defendants. The amount fixed upon as due the plaintiff was $2,637.53. This amount was incorporated into the written contract entered into between the parties and into a bill of sale from the plaintiff to the defendants. Of the consideration so to be paid the defendants executed their note for $1,600 and paid the balance in cash. The defendants aver that by mutual mistake the net equivalent of about $3,500 was omitted from their computation, and that the amount thus mistakenly found due the plaintiff was about $1,100 too large.

The parties had formed their partnership about one year prior to the date of dissolution. They had all formerly lived at Sioux Center. They organized the partnership for the purpose of becoming successors in business to one Scott. They purchased his building for $10,000. Of this sum they paid $4,000 in cash and gave their note for $6,000. The agreement between the partners was that the capital should be $9,000, of which each should contribute one-third. None of them ever did pay the full amount so agreed upon. The amount actually paid by each one was as follows: Slob, $2,100; De Mots, $2,635; Hoeven, $2,700. During the course of the year they drew out funds as follows: De Mots, $255.80; Slob, $477.34; Hoeven, $804.33. In the negotiations for the sale or dissolution, four days were consumed in making a complete invoice of the assets of the firm. This was done principally by Slob and Hoeven. As a result of such invoice, a certain statement of items and figures was made out by Slob and Hoeven, and which is known in this record as "Exhibit 6," and is as follows:

Trial Balance.

|  |  | Dr. | Cr. |
|---|---|---|---|
| Dec. 31. | Owe Michigan Buggy Co. |  | $1,592 95 |
|  | Less 15-5-2 percent..... |  | 332 36 |
|  | Net.. ................ |  | 1,260 59 |
| Dec. 31. | Interest on $6,000 at 6 percent .. .......... |  | 360 00 |
| Dec. 31. | Taxes ..' ............. |  | 90 20 |
| Dec. 31. | Commission to Riter Imp. Co. .. ............. |  | 20 00 |
| Dec. 31. | Commission due us outstanding .. .......... $ | 712 56 |  |
| Dec. 31. | J. W. Koontz, as per ledger .. ........... | 180 84 |  |
| Dec. 31. | A. J. Valiquette for Concord ... ............. | 75 00 |  |
|  | Book Acct. ........... | 272 20 |  |
|  | Warehouse storage ..... | 200 00 |  |
|  | Trip to factory ........ | 76 05 |  |
|  | One Banner buggy on hand .. ............. | 23 05 |  |
|  | Bryan & Nelson, Com... | 8 17 |  |
|  | Freight on three cars buggies on hand...... | 300 00 |  |
|  | Team .. ............. | 475 00 |  |
|  | Dray .... ............. | 185 00 |  |
|  | Harness, blankets ...... | 55 00 |  |
|  | Mimeograph ... ...... | 30 00 |  |
|  | Carpets ... ......... | 40 00 |  |
|  | Sample room .......... | 992 75 |  |
|  | Ledger, stationery and office supplies ........ | 30 00 |  |
|  | Grips .. ............. | 15 00 |  |
|  | Cash and check book.... | 149 75 |  |
|  | J. Hoeven, interest on money .. .......... |  | 135 00 |
|  | De Mots, interest on money ... .......... |  | 131 70 |
|  | A. Slob, interest on money .. .......... |  | 105 00 |

| | | |
|---|---:|---:|
| De Mots, to equal salary of Hoeven .......... | | 574 47 |
| Slob, to equal salary of Hoeven ............. | | 327 09 |
| Depreciation on building | | 500 00 |
| | $3,820 27 | $3,504 05 |
| Hoeven, gain .......... | | 105 44 |
| De Mots, gain ......... | | 105 44 |
| Slob, gain ............ | | 105 44 |

The following Exhibit 8 is a correct statement of the resources and liabilities of the firm on the date of the dissolution:

### Resources.

| | | |
|---|---:|---:|
| Building ................ | $10,000 | 00 |
| Commissions due, outstanding... | 712 | 56 |
| J. W. Koontz, as per ledger.... | 180 | 84 |
| A. J. Valiquette ............. | 75 | 00 |
| Book accounts .............. | 272 | 20 |
| Warehouse storage ........... | 200 | 00 |
| Trip to factory ............. | 76 | 05 |
| One Banner buggy on hand..... | 23 | 05 |
| Bryan & Nelson, Com. ........ | 8 | 17 |
| Freight on 3 cars buggies on hand | 300 | 00 |
| Team ...................... | 475 | 00 |
| Dray ...................... | 185 | 00 |
| Harness, blankets ............ | 55 | 00 |
| Mimeograph .. .............. | 30 | 00 |
| Carpets ................... | 40 | 00 |
| Sample room ................ | 992 | 75 |
| Ledger, stationery and office supplies .. .................. | 30 | 00 |
| Grips .. .................... | 15 | 00 |
| Cash and check book .......... | 149 | 75 |
| Accounts— | | |
|    Gerrit De Mots....$275 80 | | |
|    Albert Slob ....... 477 34 | | |
|    J. Hoeven ....... 804 33 | 1,557 | 47 |
|    Total resources .......... | $15,377 | 74 |

Liabilities.

| | | |
|---|---:|---:|
| M. Buggy Co. ............... | $ 1,260 | 59 |
| Due on building ............. | 6,000 | 00 |
| Interest, 6 percent on $6,000.00 | 360 | 00 |
| Taxes ... ................. | 90 | 20 |
| Commission to Riter Imp. Co.... | 20 | 00 |
| Capital— | | |
|    Gerrit De Mots...$2,635 00 | | |
|    Albert Slob ..... 2,100 00 | | |
|    J. Hoeven ...... 2,700 00 | 7,435 | 00 |
| Depreciation of building....... | 500 | 00 |

| | | |
|---|---:|---:|
| Total liabilities .......... | $15,665 | 79 |
| Loss ... ................. | $    288 | 05 |

There is no contradiction nor inconsistency between the items of assets and liabilities of the two statements. The fundamental difference between them is that Exhibit 6 was not a complete statement of assets and liabilities, in that it failed to include the $10,000 building among the assets and failed to include the $6,000 debt and the capital paid in among the liabilities. The effect of Exhibit 6 was to show an apparently large undivided profit. This profit purports to be applied to an equalization of the amounts drawn out by the respective partners. $574.47 is applied to the credit of De Mots and $327.09 to the credit of Slob "to equal salary of Hoeven." In like manner certain amounts were applied to the credit of each partner as interest in proportion to the capital paid in. The computation thus made purports to show a further net gain to each partner of $105.44. The amount agreed to be paid to the plaintiff was made up as follows:

| | | |
|---|---:|---:|
| Capital paid in ....................... | $2,100 | 00 |
| Interest thereon ..................... | 105 | 00 |
| "To equal salary of Hoeven"............... | 327 | 09 |
| One-third net gain ..................... | 105 | 44 |
| Total ... ..................... | $2,637 | 53 |

It is clear that there was no such profit to be divided as assumed in Exhibit 6. Omitting the item of $500 for depreciation of building, there would be a net profit of $212, not allowing any interest on capital. To find such profit, however, each partner must be treated as a debtor to the firm for the amount drawn out by him in the course of the year. In Exhibit 8 these amounts are charged as accounts against the respective members and are included in the assets, and this is a proper method of equalization. If $500 be charged off for depreciation of building, then there was a net loss to the enterprise of $288.05. That the plaintiff received much more than would be due him upon the invoice and the division of profits is mathematically certain. The question is, however, whether this amount was agreed upon as the result of a mutual mistake. It is contended by the plaintiff that he simply used these figures for his own guidance, and that he named a lump sum, and that the other parties accepted the offer.

The written contract entered into named the sum without stating any basis of computation. The plaintiff is entitled to stand upon it and to prevail unless the defendants have made a clear case.

There are a few details in the circumstances surrounding the transaction which throw considerable light upon the question. The defendants became somewhat dissatisfied with the plaintiff on the alleged ground that he was spending much time at his home in Sioux Center instead of at their place of business. On January 7th preceding the dissolution, they wrote him a somewhat peremptory letter, wherein they notified him that they had "decided to dissolve," and that "you can either buy or sell," and "we want you here not later than Monday to settle up." To this letter the plaintiff replied somewhat sharply on January 8th. On January 11th he made further reply thereto as follows:

Gerrit De Mots and Jacob Hoeven, Sioux City, Iowa.— Gentlemen: With further reference to your letter under

date of Jan. 7, inst., will say and you are hereby informed that I have decided and have chosen to sell out all my interest which I now hold in the firm of the Western Implement & Storage Co. of Sioux City, Iowa, and will be there tomorrow morning to start to take invoice. Yours truly, Albert Slob.

When the plaintiff arrived at the firm's place of business, he was requested by his partners to name a lump sum. He declined to do so and insisted upon an invoice. Four days were spent by him and Hoeven in the taking of such invoice. He testified that he fixed upon the amount upon the basis of the invoice, and that such amount included the items which we have heretofore indicated. The specific form of the amount as to dollars and cents tends to indicate that it was the result of computation of specific items. The letter of January 11th, which we have already quoted, purports to be an election on his part to sell upon invoice. His conduct afterwards was consistent with the purpose expressed in this letter. On the day of the dissolution and after the completion of the transaction, he discovered an item of $3 in his own favor which had been overlooked. He made claim therefor to the defendants on the theory that it was an item overlooked. They recognized it as such and paid it. On the next day the defendants discovered the alleged mistake now complained of. They telephoned to him at once. It is undisputed that he said at that time, in substance, that if there was a mistake in the computation he would make it right. The only qualification which he attempts in his own testimony at this point is that he said that, 'if there was a mutual mistake in computing the figures which covered the amount for which I sold out, then I would make it right.'

We are convinced that both plaintiff and defendants understood that the amount to be paid to plaintiff was to be determined by computation from the invoice, and that the amount fixed upon was the result of mutual mistake. We think also that the defendants have proved such fact by that clear *quantum* of evidence which is required in order to justify the relief asked. That the plaintiff so understood it is indicated by his letter already referred to, by his in-

sistence upon an invoice, by the fact that four days were spent in taking an exact invoice, by the fact that there is not a disputed or uncertain item in the invoice, by the specific form of the amount agreed upon, by his own demand for rectification of error in his own favor, and by the fact that, after being advised by defendants of the alleged mistake, he repeatedly promised to rectify it without in any manner denying his duty or liability to do so.  Doubtless, no one of these circumstances would of itself be very cogent, but taken collectively and in connection with direct evidence of the parties they are very persuasive.  That the plaintiff agreed to stand a depreciation of $500 on the building is practically undisputed, and the item appears as such in Exhibit 6.

Counsel for appellee urge upon us that substantially all the testimony offered by the defendants is incompetent 2. SAME: parol evidence. as parol evidence tending to contradict a written contract.  Such rule has no application to a suit in equity wherein the reformation of the written contract is the relief sought.

It is our conclusion that the relief prayed by defendants should be granted to the extent that the contract and note should be reformed as to the amount to be paid by the defendants.  Exhibit 8, already referred to, presents a proper basis of computation.  The case may be remanded for final decree with leave, however, to either party to present a computation and move for a decree here.

The judgment of the trial court is, accordingly, *reversed*.